UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TROY DAVIS (#356886)

VERSUS                                          CIVIL ACTION

JONATHAN A. ROUNDTREE, ET AL                    NUMBER 12-41-JJB-SCR

**<u>NOTICE</u>**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, August 6, 2014.

                                      STEPHEN C. RIEDLINGER
                                      UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TROY DAVIS (#356886)

VERSUS                                              CIVIL ACTION

JONATHAN A. ROUNDTREE, ET AL                        NUMBER 12-41-JJB-SCR

**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the Plaintiff's Motion for Summary Judgment, record document number 72, and the defendants' Motion for Summary Judgment, record document number 73. Defendants opposed the plaintiff's motion[1] and the plaintiff opposed the defendants' motion.[2] Plaintiff filed a reply to the defendants' opposition.[3]

Pro se plaintiff, an inmate confined in Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Asst. Warden Kenneth Norris, Dr. Jonathan Roundtree and Dr. Jason Collins. Plaintiff alleged that he was denied adequate medical treatment in violation of his constitutional rights. Plaintiff sought compensatory damages and injunctive relief.

Plaintiff moved for summary judgment relying on a statement of

---

[1] Record document number 75.

[2] Record document number 76.

[3] Record document number 77.

undisputed facts, his affidavit, a copy of a memorandum dated November 24, 2008 from Dy. Warden of Operations Ronald Jett to the plaintiff, copies of medical duty status reports, and a copy of the results of Administrative Remedy Procedure (hereafter "ARP") LSP-2011-2168.[4]

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Dr. Roundtree, Tracy Falgout, Dr. Hal MacMurdo, Dr. Collins and Courtney Adams, copies of the plaintiff's medical records, and the results of ARP LSP-2011-2168.

Based on a careful review of the plaintiff's medical records, consideration of all of the summary judgment evidence, and the applicable law, the defendants' motion should be granted and the plaintiff's motion should be denied.

## I. Factual Allegations

Plaintiff alleged that he has experienced hearing loss. Plaintiff alleged that on November 12, 2008, Dr. Roundtree issued him a medical duty status with a deafness protocol stipulation. Plaintiff alleged that at that time Dr. Roundtree recommended surgery to address the problems he was experiencing with balance and dizziness.

---

[4] Plaintiff addressed claims in his motion for summary judgment which were not raised in the complaint. Plaintiff's motion for summary judgment, filed two years after the complaint was filed, shall not be treated as an amendment to the complaint.

Plaintiff alleged that on April 30, 2010, an audiogram was conducted. Plaintiff alleged that on January 24, 2011, his medical duty status was cancelled based on the audiogram test results. Plaintiff alleged that on June 22, 2011, Dr. Collins examined him for a series of ear infections and recommended that he undergo surgery on both ears and issued him a medical duty status for deafness/hearing loss. Plaintiff alleged that Dr. Collins instructed him to keep a diary of episodes of dizziness. Plaintiff alleged that Dr. Collins failed to communicate with him regarding the entries he made in the diary.

Plaintiff alleged that on September 27, 2011, Asst. Warden Norris prepared a first step response to his administrative grievance. Plaintiff alleged that in his response, Asst. Warden Norris stated that after a chart review was conducted he found that the plaintiff suffered from functional hearing loss but that the plaintiff's hearing is more than adequate for the purpose of communicating. Plaintiff alleged that Asst. Warden Norris based his response on the same audiogram test results which Dr. Collins relied upon to recommend a medical duty status and surgery. Plaintiff argued that Asst. Warden Norris should have consulted medical professionals and not relied on his own judgment to assess the plaintiff's medical condition.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c). Speculation, unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012). The court need only consider cited materials, but it may consider other materials in the record. Rule 56(c)(1)(3).

### B. Prescription

Defendants argued that any claim which arose prior to October 7, 2009 is prescribed.

It is well settled that in § 1983 cases, federal courts look to the most consonant statute of limitations of the forum state. *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573 (1989); *Kitrell v. City of Rockwall*, 526 F.2d 715, 716 (5th Cir.), *cert. denied*, 426 U.S. 925, 96 S.Ct. 2636 (1976). For § 1983 cases brought in Louisiana federal courts, the appropriate statute of limitations is one year. Louisiana Civil Code Article 3492; *Elzy v. Roberson*, 868

4

F.2d 793 (5th Cir. 1989); *Washington v. Breaux*, 782 F.2d 553 (5th Cir. 1986); *Kissinger v. Foti*, 544 F.2d 1257, 1258 (5th Cir. 1977). Plaintiff signed his complaint on January 20, 2012 and it was filed on January 24, 2012. Ordinarily, any claim the plaintiff had against these defendants regarding acts which occurred prior to January 24, 2011, have prescribed.

However, the holding in *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999), affects this court's decision. In *Harris*, the United States Court of Appeal for the Fifth Circuit concluded that the pendency of properly filed ARP proceedings will act to toll the running of the one-year limitations period for prisoners' claims in this state.

Plaintiff filed ARP LSP-2011-2168 on August 18, 2011, and it was received in the Warden's Office on August 22, 2011.[5] Plaintiff complained that on January 13, 2011, he asked to use a text telephone, known as a TTY, presumably to contact family members following the death of his grandmother. Plaintiff complained that Dr. Roundtree failed to respond to his letter seeking assistance regarding his request to use the TTY. Plaintiff complained that on January 24, 2011, he was advised that Dr. Roundtree determined that he did not fit the scope for use of the TTY.

Plaintiff complained that on March 13, 2011, he wrote the Barrow Treatment Center seeking treatment for worsening hearing

---

[5] Record document number 73-3, p. 10.

loss, unstable balance and painful, itching ears. Plaintiff complained that on that same date he was referred to have his ears washed and was placed on medication for an ear infection. Plaintiff complained that he made sick call in April, May and June 2011 and was erroneously charged for the same medical complaint.

Finally, the plaintiff complained that on January 24, 2011, his medical duty status issued on November 12, 2008 for deafness protocol was withdrawn based on audiogram results. Plaintiff complained that on June 22, 2011, another doctor recommended another medical duty status to no avail.

The ARP was denied at the First Step on September 27, 2011[6] and at the Second Step on December 8, 2011.[7]

ARP LSP-2011-2168 tolled the limitations period between August 18, 2011, the date the plaintiff filed the ARP, and December 8, 2011, the date the ARP was denied at the Second Step of the two step procedure, for a total of 113 days.

Ordinarily, all claims filed prior to January 20, 2011 would be prescribed. However, when the plaintiff is given the benefit of the 113 day period in which the limitations period was tolled while ARP LSP-2011-2168 was pending, the prescriptive period is calculated by counting backwards 113 days from the ordinary prescriptive date, or until September 29, 2010.

---

[6] *Id*. at 4-5.

[7] *Id*. at 3.

The summary judgment evidence supports finding that all claims which arose prior to September 29, 2010 are prescribed.

**C. Medical Indifference**

Plaintiff alleged that Dr. Roundtree and Dr. Collins were deliberately indifferent to his serious medical needs when they modified his treatment and medical duty status based on physical examination and audiogram tests results. Plaintiff alleged that Dr. Roundtree ignored the medical opinion of Dr. Collins who recommended surgery and a medical duty status. Plaintiff further alleged that Dr. Collins did not discuss with him the diary entries he made regarding episodes of dizziness.

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment he felt he should have is not the issue. *Estelle v. Gamble*, supra; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Unsuccessful medical treatment does not provide a basis for a civil action under 42 U.S.C. § 1983 for violation of a constitutional right. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional

7

violation. *Varnado, supra*.

Plaintiff's medical records showed that on November 5, 2008, the plaintiff submitted a Request for Accommodation in which he requested hearing aids for both ears.[8] Plaintiff was referred for bilateral hearing loss testing.[9] Out of an abundance of caution the plaintiff was also issued a medical duty status until the audiogram was conducted.[10] Plaintiff's medical records showed that on April 30, 2009, the plaintiff underwent audiometric evaluation.[11] Test results indicated functional hearing loss with hearing "more than adequate for communication purposes."[12]

The summary judgment evidence showed that on April 30, 2009, Courtney Adams, Au.D., a licensed audiologist at University Medical Center, Lafayette, Louisiana, conducted an audiometric evaluation of the plaintiff on April 30, 2009.[13] The audiometric evaluation consisted of several tests both subjective and objective.[14] The objective tests consisted of tympanometry, acoustic reflexes and

---

[8] Record document number 73-5, p. 144.

[9] *Id*.

[10] Record document number 73-4, affidavit of Dr. Jonathan Roundtree.

[11] Record document number 73-5, pp. 107-114.

[12] *Id*. at 108.

[13] Record document number 73-9, affidavit Courtney Adams, Au.D.

[14] *Id*. at 1.

8

distortion product otoacoustic emissions during which the patient is given instructions to be still and quiet and no response is required.[15] The objective tests are physiologic measures of the middle ear and the inner ear, specifically the outer hair cells.[16] The subjective tests consisted of a speech reception threshold, speech discrimination score, and pure tone air and bone audiometry.[17] Speech testing requires the patient to repeat words he hears and pure tone testing requires the patient to raise his hand when a beep is heard through earphones and a bone oscillator, no matter how soft.[18]

The summary judgment evidence showed that there were inconsistencies between the objective and subjective test results.[19] The objective tests indicated that the plaintiff may have a high frequency hearing loss above 4000Hz which can not be corrected by surgery.[20] The summary judgment evidence showed that the plaintiff was diagnosed with "functional hearing loss", i.e., malingering.[21]

Plaintiff's medical records showed that on July 28, 2010, Dr.

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 1-2.

[21] *Id.* at 2.

9

Billy Cannon referred the plaintiff for hearing evaluation.[22] A notation was made in the plaintiff's chart that "[i]n system Sched. For Audo Next Avail."[23] On November 9, 2010, Dr. Cannon sent a second referral to have the plaintiff's hearing evaluated.[24] Plaintiff refused hearing evaluation on November 29, 2010[25] and again on January 3, 2011.[26]

On February 2, 2011, the plaintiff was administered an Otogram®, which is an automated audiogram.[27] The test results indicated that the plaintiff had inconsistencies between the objective and subjective findings similar to the results from the 2009 audiology testing.[28] In April 2011, the plaintiff's medical duty status was changed to regular duty.[29]

Plaintiff's medical records showed that the plaintiff complained of ear pain and/or hearing loss on March 13, 16 and 25,

---

[22] Record document number 73-5, p. 122.

[23] *Id.*

[24] *Id.* at 119.

[25] Record document number 106.

[26] Record document number 104.

[27] Record document number 73-6, p. 2, affidavit of Tracy Falgout, R.N.

[28] *Id.*; see also, record document number 73-5, pp. 100-103.

[29] Record document number 73-5, p. 103.

April 3, May 13 and 27 and June 22, 2011.[30] In each instance, the plaintiff was examined, and when deemed medically warranted he received treatment for his complaints.[31]

Plaintiff's medical records showed that in September 2011 the plaintiff received treatment for complaints of headaches and dizziness which the plaintiff stated he began experiencing following a fight with another inmate on September 6, 2011.[32] Plaintiff's medical records showed that the plaintiff was examined by medical personnel for these complaints on September 9, 13 and 21.[33] Plaintiff's medical records showed that Dr. Collins instructed the plaintiff to keep a diary of the episodes of dizziness which the plaintiff asserted resulted from the fight which occurred on September 6.[34]

Plaintiff's medical records showed that he was examined for various complaints including ear aches, ear infections and hearing loss on October 5 and November 22, 28, 2011, January 4, 23 and February 9, 2012.[35] In each instance the plaintiff was examined by medical personnel, and when medically warranted was treated with

---

[30] *Id*. at pp. 85, 89-91, 94-98.

[31] *Id*.

[32] *Id*. at 83.

[33] *Id*. at 76, 79 and 82.

[34] *Id*. at 76.

[35] *Id*. at 66-75.

11

medication.[36] A notation in the plaintiff's medical chart noted that he used Q-tips® swabs to clean his ears.[37] The summary judgment evidence showed that the plaintiff was constantly putting things in his ears and was instructed not to do so on numerous occasions.[38]

There is no medical evidence in the record to support the conclusion that such surgery is warranted for the plaintiff's hearing loss, nor any entry in the plaintiff's medical records that any treating physician recommended that the plaintiff undergo surgery on his ears for hearing loss. Consequently, there is no evidence that the defendants were deliberately indifferent to the plaintiff's serious medical needs.

### D. Response to Administrative Remedy Procedure

Plaintiff alleged that Asst. Warden Norris' First Step Response to his ARP was inadequate and Asst. Warden Norris failed to consult with medical personnel before preparing his ARP response. Plaintiff alleged that Asst. Warden Norris reviewed his medical records and test results and then concluded that the plaintiff was capable of communicating adequately.

Plaintiff does not have a constitutional right to have prison

---

[36] *Id*.

[37] *Id*. at 66.

[38] Record document number 73-8, affidavit Dr. Jason Collins.

12

officials respond favorably to an administrative grievance or to have them consult with medical personnel before preparing a response.

### E. Retaliation

Plaintiff alleged that the defendants retaliated against him for seeking medical treatment by failing to schedule another appointment following the issuance of the First Step Response to ARP LSP-2011-2168, and because Dr. Collins failed to communicate with the plaintiff after instructing him to keep a diary of his episodes of dizziness.

To prevail on a claim of retaliation, a prisoner must establish four elements (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris*, 449 F.3d at 684; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods*, 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege

13

more than his personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299,310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendants' part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166. In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris*, 449 F.3d at 684-85; *Hart*, 343 F.3d at 764.

Plaintiff is unable to point to a specific constitutional right that has been violated. The summary judgment evidence showed that the First Step Response to ARP LSP-2011-2168 was issued on September 27, 2011.[39] Plaintiff's medical records showed that the plaintiff was scheduled for and underwent examination at the Physician's Clinic several times following September 27, 2011.[40] Moreover, there is no evidence in the medical records that Dr. Collins refused to discuss the plaintiff's diary entries. Even assuming Dr. Collins did refuse to discuss the plaintiff's diary

---

[39] Record document number 73-3, pp. 4-5.

[40] Record document number 73-5, pp. 66, 68 and 72.

entries, that would not be an adverse act sufficient to support a retaliation claim.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the Plaintiff's Motion for Summary Judgment be denied, the defendants' Motion for Summary Judgment be granted and this action be dismissed.

Baton Rouge, Louisiana, August 6, 2014.

*Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE